Dear Mr. Danzy,
Your request for an Attorney General's Opinion on behalf of the Louisiana Professional Engineering and Land Surveying Board ("LAPELS") has been assigned to me for research and reply.
You have asked whether LAPELS may temporarily waive a portion of the licensure application fees and licensure renewal fees which it charges to all applicants and licensees. If so, you question whether a temporary waiver would limit LAPELS' ability to return to charging the full fees at any time.
Next, you ask whether LAPELS may provide grants to public or private institutions that have ABET approved engineering or geomatics programs for the specific use by the institution to assist students (a) enrolled in approved engineering or geomatics programs; or (b) in preparing for the Engineering or Surveying Intern tests.
Finally, you ask whether LAPELS may contract with an individual or firm to provide services for aiding applicants in the study and preparation for examinations required by LAPELS for licensure. If so, you ask whether LAPELS would have to offer these services for all of the different types of examinations it oversees. *Page 2 
In response to your first question concerning a temporary waiver of licensure fees, La. Atty. Gen. Op. No. 08-0271 is instructive. In that opinion, the Louisiana Auctioneers Licensing Board questioned whether it had the discretion to waive the annual licensing fee of $150 for any auctioneer over the age of 65. The statute governing fees the Board could charge was broken into two parts: fees that the Board may assess and fees that shall be paid.[1] The opinion considered the laws governing statutory construction, specifically, that the word `shall' is used in a statute to signify that something is mandatory whereas the word `may' is used to signify something is permissive. See La.R.S. 1:3. Based on La.R.S. 1:3, the opinion concluded that only those fees set forth in R.S. 37:3116(A) could be waived by the Board because of the discretion given to the Board by the legislature's use of the word `may' in the statutory language. The opinion concluded that the fees listed in the second part of the statute (which provided that the fee "shall be the greater of" two sums) could not be waived by the Board.
With regard to LAPELS, La.R.S. 37:694(B)(1) allows your Board to establish licensure fees. It provides as follows:
 The application fee for professional engineers, professional land surveyors, engineer interns, land surveyor interns, and firms shall be established at the discretion of the board, but shall not exceed two hundred dollars, and said fee shall accompany the application. The board may not increase the application fee by more than thirty dollars in any three-year period.
La.R.S. 37:697(C) allows LAPELS to establish a licensure renewal fee. It provides: *Page 3 
 The maximum fee for late renewal shall be established by the board, provided that said renewal fee shall not exceed three times the normal renewal fee. The board shall not increase the biennial renewal fee by more than twenty dollars in any one-year period.
In accordance with these statutes, LAPELS has set its licensure and licensure renewal fees. Unlike in the statute governing the Auctioneers Licensing Board (set forth in footnote one), the use of the word `shall' in the LAPELS statutes cited above does not state that a certain fee "shall be paid," but rather that the fees "shall be established at the discretion of the Board." Therefore, the Board has the discretion to determine the amount of the licensure fees or to charge no licensure fees at all. Pursuant to § 1703 of the Board's Rules and Regulations, the Board's decision regarding fees "shall be established by a majority vote at a regular meeting." If the Board makes the decision that no licensure fees are due, it should amend its fee schedule to avoid a possible violation of La.Const. art. VII, Sec. 14.[2] Because the Board has the discretion to set fees due to it by the professionals it oversees, temporarily waiving the fees would not prohibit the Board from later reinstating the licensure and licensure renewal fees.
If the legislature had written the law to say that the fees listed above "shall be paid," (as opposed to "shall be established at the discretion of the Board") then waiving the fees would constitute a violation of La.Const. art. VII, Sec. 14(A) because the Board would be giving up a thing of value without receiving anything in return. See, e.g., La. Atty. Gen. Op. No. 10-0287 (stating that "[v]oluntarily releasing a tenant from its lease, thereby giving up $90,000.00 in revenue due to the Port, would violate La.Const. art. VII, Sec. 14(A)."); see also La. Atty. Gen. Op. No. 76-1709 (opining that "the Houma-Terrebonne Airport Commission was without authority to mutually rescind a lease for no consideration and that doing so would violate La.Const. art. VII, Sec. 14(A).").
In response to your next question, whether LAPELS may provide grants to public or private institutions to be used to assist students in engineering or geomatics *Page 4 
programs or those studying for the Engineering or Surveying Intern tests, the answer is no.
Past opinions of this office that have considered whether a public body may use public funds to award a scholarship were based on whether the public body had statutory authority to award scholarships.[3] La. Atty. Gen. Op. No. 81-1221 addressed whether public funds could be used by the Louisiana Real Estate Commission to provide scholarships to programs directly related to the real estate field. The Louisiana Real Estate Commission was granted specific statutory authority to assist and promote educational programs relating to real estate. Therefore, the opinion concluded that awarding scholarships to students who could be classified as poor or needy did not violate the Louisiana Constitution. Similarly, in La. Atty. Gen. Op. No. 92-543, this office opined that the Plaquemines Parish Government could fund college scholarships. Like the Real Estate Commission, the Plaquemines Parish Government was statutorily authorized to "grant scholastic expenses or scholarships to worthy high school graduates" in accordance with La.R.S. 17:1756(B).[4]
A review of the Board's governing statutes (La.R.S. 37:681-703) and its Rules and Regulations promulgated in accordance with the Administrative Procedure Act reveals that LAPELS is without legal authority to award scholarships. Therefore, it may not use public funds to provide grants to public or private learning institutions for use supporting students enrolled in approved engineering or geomatics programs or in preparing for the Engineering or Surveying Intern tests. This conclusion is consistent with La. Atty. Gen. Op. No. 09-0104, which concluded that the Town of White Castle could not use public funds to award college scholarships because it lacked statutory authority to do so. If financially assisting students pursuing a career in the fields regulated by LAPELS is something the Board would like to do, we recommend amending your governing statutes to provide you with the necessary authority.
Your final question is whether LAPELS may contract with an individual or firm to provide services to help applicants prepare for examinations required for licensure. As the Board charged with overseeing professional engineers and land surveyors in the State, LAPELS is authorized to set the standards, including testing requirements, for licensure. There is, however, no authority given to *Page 5 
LAPELS to prepare applicants for the tests. In our opinion, the authority to administer the tests and set the requirements for eligibility to take the tests does not include the authority to help prepare applicants for the test. As discussed above, in order to spend public funds, the public entity must be authorized to make the expenditure. Because LAPELS does not have this authority, it may not expend public funds for this purpose. The cost of attending an exam preparation class must be borne by the individual attending the class.[5]
Because we have concluded that LAPELS is without authority to contract with a private test preparation company to help applicants prepare for examinations required for licensure, the second part of your question (whether LAPELS would have to offer these services for all of the different types of examinations it administers) is moot.
We hope that this opinion has adequately addressed the legal issues you have raised. If our office can be of any further assistance, please do not hesitate to contact us.
Yours very truly,
 JAMES D. "BUDDY" CALDWELL
 Attorney General
 By: __________________________
 Lindsey K. Hunter
 Assistant Attorney General

JDC/LKH/chb
[1] The statute governing fees for the Auctioneers Licensing Board is R.S. 37:3116, which provides, in pertinent part, as follows:
A. Except as otherwise provided in Subsections B and C of this Section, the board may assess the following schedule of fees:
* * *
(4) Initial license fee for an auctioneer — $150.00;
(5) Annual license renewal fee for an auctioneer — $150.00
* * *
B. The fee for initial licensure or annual renewal of licensure of a nonresident auctioneer licensed or to be licensed by reciprocity pursuant to R.S. 37:3117 shall be the greater of either.
(1) The sum of one hundred fifty dollars.
(2) The amount of such fee assessed an auctioneer licensed in Louisiana for licensure by reciprocity in the licensing jurisdiction of such nonresident auctioneer.
C. The fee for initial licensure or annual renewal of licensure of an auction business owned by a nonresident auctioneer shall be thegreater of either.
(1) The sum of three hundred dollars.
(2) The amount of such fee assessed an auction business owned by a Louisiana auctioneer in the licensing jurisdiction of such nonresident auctioneer.
[2] See La. Atty. Gen. Op. No. 00-395. In that opinion, the St. James Parish Council questioned whether it could pass an ordinance assessing rental fees and damage deposits for the use of parks and facilities located within its recreation districts. The parish also wanted to waive the payment of rental fees in one particular recreation district. The opinion concluded:
 While it would certainly be within the power and authority of the Council to establish and collect fees for the use of its facilities, we are aware of no law or constitutional provision which would require the assessment and collection of such fees at all of its districts' parks. Accordingly, it is the opinion of this office that the Council may waive the fees for the park and facilities located within District 5, without waiving the fees for facilities located within the other Districts. As previously noted, the ordinance in effect imposes fees and damage deposits for all Districts. This ordinance should be amended to reflect the waiver for District No. 5 to avoid a possible violation of Article VII, Section 14(A) of the Louisiana Constitution of 1974.
[3] Our office has consistently opined that in order for an expenditure of public funds to be in compliance with La.Const. art. VII, Sec. 14, the public entity must have the legal authority to make the expenditure
and must show: (i) a public purpose for the expenditure or transfer that comports with the governmental purpose for which the public entity has legal authority to pursue; (ii) that the expenditure or transfer, taken as a whole, does not appear to be gratuitous; and (iii) that the public entity has a demonstrable, objective, and reasonable expectation of receiving at least equivalent value in exchange for the expenditure or transfer of public funds. The legal authority to make the expenditure must exist before the three-prong analysis is ever considered.
[4] Additional examples of statutory authority for public funds to be used to award scholarships are found at La.R.S. 46:1102, 46:1132 and46:1151.
[5] Even if LAPELS had authority to prepare test takers for its tests (which it does not), since contracting with a third party would involve the expenditure of public funds, the transaction would have to be considered in light of La.Const. art. VII, Sec. 14. The final prong of the Cabela's analysis (set forth in footnote three) requires that the public entity be able to demonstrate that it expects to receive at least equivalent value for the public funds spent. In this case, the benefit would belong to the test takers, who may never become licensed, and not to the Board spending the public funds.